# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

EGGERT GROUP, LLC,

        Plaintiff,

     v.                                   Case No. 04-C-759

TOWN OF HARRISON,

        Defendant.

---

## DECISION AND ORDER RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

### I. BACKGROUND

This action was commenced on August 10, 2004, when the plaintiff, Eggert Group, LLC, ("Eggert") filed a complaint in the United States District Court for the Eastern District of Wisconsin pursuant to 42 U.S.C. § 1983 alleging that Town of Harrison Ordinance No. 95, Sections 1.19 and 1.14, is facially invalid because it unlawfully infringes upon the plaintiff's freedom of expression secured by the First and Fourteenth Amendments. The ordinance at issue prohibits nude dancing in establishments that are licensed to serve alcoholic beverages. This action was originally assigned to United States District Judge William C. Griesbach and was transferred to this court after both parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General L.R. 73.1 (E.D. Wis.).

Currently pending before the court is the plaintiff's motion for summary judgment which is fully briefed and is ready for resolution. For the reasons which follow, Eggert's motion for summary judgment will be granted.

## A. Factual Background

In accordance with the provisions of Civil Local Rule 56.2(a) (E.D. Wis.), the plaintiff's motion for summary judgment was accompanied by a set of proposed findings of fact. Likewise, the defendant's response to the plaintiff's motion for summary judgment contained responses to the plaintiff's proposed findings of fact as well as some additional proposed findings of fact. A review of the parties' respective proposed findings and the responses thereto reveals that the following are material and undisputed facts in this case.

The Eggert Group, LLC, owns, operates, and holds a liquor license for an establishment in the Town of Harrison ("the Town" or "Harrison"), known as "Sapphires." (Pl.'s Proposed Finding of Fact ("PPFOF") ¶ 1.) Sapphires is a gentlemen's club which has a liquor license and provides live entertainment, including nude dancing. (PPFOF ¶ 2.)

After the liquor license was granted and Sapphires opened for business, the Town of Harrison passed, on May 18, 2004, Ordinance No. 95, Series 2004, Sec. 1.14(j) and (k) and Sec. 1.19, which prohibit nude dancing in establishments that serve liquor. (PPFOF ¶ 3.) Ordinance No. 95 applies only to establishments licensed by the Town of Harrison to sell alcohol. Eggert's Sapphires is one of those establishments. (Def.'s Proposed Finding of Fact ("DPFOF") ¶ 4.)

The Town has not issued any citations to Eggert based on Ordinance No. 95. The Town did issue one citation, based on a similar ordinance, on June 2, 2004. That citation is the subject of an ongoing case in the Wisconsin state courts. No other citations have been issued, and Eggert continues to operate unfettered. (DPFOF ¶ 2.) Eggert has never been closed down due to the action of the Town of Harrison. (DPFOF ¶ 3.)

2

Eggert claims that if it is forced to comply with the prohibitions, the plaintiff will suffer loss of its freedom of expression, protected by the First Amendment.  (PPFOF ¶ 6.)  In addition, Eggert claims that it believes it has suffered loss of profits as a result of its efforts to comply with the prohibitions.  (PPFOF ¶ 7.)

**B.  The Ordinance**

The Harrison ordinance that regulates nude dancing in licensed establishments is comprised of two separate, but very similar sections:

Section 1.14 Conditions of Licensure.

(k)      Improper Exhibitions.  It shall be unlawful for any person to perform, or for any licensee or manager or agent of the licensee to permit an employee, entertainer or patron to engage in any live act, demonstration, dance or exhibition on the licensed premises which:

> (1)      Exposes his or her genital, pubic hair, buttocks, perineum, anal region or pubic hair region; or
>
> (2)      Exposes any device, costume or covering which gives the appearance of or simulates genitals, pubic hair, buttocks, perineum, anal region or pubic hair region; or
>
> (3)      Exposes any portion of the female breast at or below the areola thereof; or
>
> (4)      Engages in or simulates sexual intercourse and/or any sexual contact, including the touching of any portion of the female breast or the male and/or female genitals.

Section 1.19 Nude Dancing in Licensed Establishments Prohibited.

(b)      Nude Dancing in Licensed Establishments Prohibited.  It is unlawful for any person to perform or engage in, or for any licensee or manager or agent of the licensee to permit any person, employee, entertainer or patron to perform or engage in any live act, demonstration, dance or exhibition on the premises of a licensed establishment which:

3

(1)     Shows his/her genitals, pubic area, vulva, anus, anal cleft or cleavage with less than a fully opaque covering; or

(2)     Shows any portion of the female breast below a point immediately above the top of the areola; or

(3)     Shows the covered male genitals in a discernibly turgid state.

(c)     Exemptions.  The provisions of this Section does [sic] not apply to the following licensed establishments; theaters, performing arts centers, civic centers, and dinner theaters where live dance, ballet, music and dramatic performances of serious artistic merit are offered on a regular basis and in which the predominant business or attraction is not the offering to customers of entertainment which is intended to provide sexual stimulation or sexual gratification to such customers and where the establishment is not distinguished by an emphasis on, or the advertising or promotion of, employees engaging in nude erotic dancing.

Harrison, Wis. Ordinance No. 95, § 1.14(k), § 1.19(b), (c) (reproduced in Pl.'s Br. at App. A-1 to A-5.)

## II.  SUMMARY JUDGMENT STANDARD

A district court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e) (quoted in *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  "Summary Judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party'"  *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

4

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing a properly supported summary judgment motion "may not rest upon the mere allegations or denials of the adverse party's pleading" but rather must introduce affidavits or other evidence to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). To state it differently, "[a] party will be successful in opposing summary judgment only when they present definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.,* 233 F.3d 432, 437 (7th Cir. 2000) (quoting *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997)) (internal quotation marks omitted).

To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *See Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)). "'In the light most favorable' simply means that summary judgment is not appropriate if the court must make 'a choice of inferences.'" *Draghi v. County of Cook*, 184 F.3d 689, 691 (7th Cir. 1999) (quoting *Smith*, 129 F.3d at 425). "The evidence must create more than '"some metaphysical doubt as to the material facts."'" *See Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001) (quoting *Johnson v. University of Wisconsin-Eau Claire*, 70 F.3d 469, 477 (7th Cir. 1995) (quoting *Matsushita Elec. Indus. Corp.,*

5

*v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))).  A mere scintilla of evidence in support of the nonmovant's position is insufficient.  *See id.* (quoting *Liberty Lobby*, 477 U.S. at 252).

Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

### III.  ANALYSIS

#### A.  Background

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech."[1]  U.S. Const. amend. I.  In addition to the written and spoken word, a wide variety of expressive activity is entitled to protection under the First Amendment.  *See Texas v. Johnson*, 491 U.S. 397, 404.  For example, burning a flag is entitled to protection as expressive conduct, *see id.* at 406, as is sleeping overnight in Lafayette Park and the Mall to demonstrate the plight of the homeless.  *See Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984).  Although considered only marginally so, nude dancing "is expressive conduct within the outer perimeters of the First Amendment." *Barnes v. Glen Theatre*, *Inc.*, 501 U.S. 560, 566 (1991); *see also City of Erie v. Pap's A.M.*, 529 U.S. 277, (2000) (plurality) ("Nude dancing of the type at issue here is expressive conduct.")  However, this does not mean that all expressive activities are entitled to absolute protection.

---

[1] In *Fiske v. Kansas*, 274 U.S. 380 (1927), the Supreme Court acknowledged that the First Amendment is applicable to the states through the Fourteenth Amendment.

6

Although nude dancing is considered protected expression, the standard of review that is used in evaluating adult entertainment is slightly different than that of other constitutionally protected expression. Initially, the standard of review turns on whether the restriction is content-based or content-neutral. Content-based regulations are presumptively invalid and are subject to strict scrutiny. *Schultz v. City of Cumberland*, 228 F.3d 831, 840 (7th Cir. 2000) (en banc). Therefore, content-based regulations may be upheld only if they are narrowly tailored and necessary to serve compelling governmental interests. *Clarkson v. Town of Florence*, 198 F. Supp. 2d 997, 1009 (E.D. Wis. 2002). Content-based regulations are those "'that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed.'" *Schultz*, 228 F.3d at 840 (quoting *Turner Broadcasting Sys., Inc. v. FCC*, 512 U.S. 622, 643 (1994)).

Content-neutral regulations, however, are not as problematic and are not subjected to strict scrutiny. Content-neutral regulations "are justified without reference to the content of the regulated speech and do not raise the specter of government discrimination." *Schultz*, 228. F.3d at 840. For example, a "general ban on speech in the vicinity of a school is content-neutral," while an "analogous ban on speech containing an exemption for speech relating to labor disputes is content-based." *Id.* at 840 (citing *Grayned v. City of Rockford*, 408 U.S. 104, 119-20 (1972); *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 95 (1972)). The Supreme Court has delineated two general categories of content-neutral restrictions on speech: those that focus on the conduct of the speech, rather than the speech itself, and those that are time, place, and manner restrictions on speech.

In *United States v. O'Brien*, 391 U.S. 367 (1968), the Supreme Court enunciated a four-part test for analyzing whether a regulation that impacts expressive conduct (or symbolic speech) is constitutional. Under the *O'Brien* test, a government regulation will be upheld despite its incidental

7

impact on speech if (1) the regulation is within the constitutional power of the government, (2) it furthers an important or substantial governmental interest, (3) it is unrelated to the suppression of free expression, and (4) the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. *Id.* at 377. Using this framework, the *O'Brien* Court upheld a government regulation banning the destruction of draft cards, even though burning a draft card to protest the Vietnam War was speech within the meaning of the First Amendment. *Id.* at 382.

The government may also limit speech indirectly by placing content-neutral time, place, and manner restrictions on speech. Content-neutral time, place, and manner restrictions do not focus directly on the speech itself, but on the circumstances surrounding the speech. The test used to evaluate time, place, and manner restrictions is virtually the same test used in *O'Brien* to evaluate regulations that impact expressive conduct. A time, place, and manner restriction that indirectly affects speech is constitutional if it (1) is justified without reference to the speech, (2) is narrowly tailored to serve a significant governmental interest, and (3) leaves open ample alternative channels for communication. *Clark*, 468 U.S. at 293.

In *Clark*, The Community for Creative Non-Violence (CCNV) sought to sleep overnight in tents in Lafayette Park and the Mall to demonstrate the plight of the homeless, but was not permitted to do so. A National Park Service regulation that restricted overnight camping to designated areas only prohibited the CCNV from staying overnight in Lafayette Park and the Mall. *Id.* at 290-91. The Court assumed that the act of erecting tents in Lafayette Park and the Mall was symbolic expression that is protected by the First Amendment, but held that the Park Service's regulation was a permissible content-neutral time, place, and manner restriction. *Id.* at 296.

8

The most relevant Supreme Court decisions dealing with adult entertainment ordinances can be divided into two categories: those that regulate public indecency (i.e., a complete ban on public nudity together) and those that regulate the zoning of adult entertainment establishments. *See Ben's Bar v. Village of Somerset*, 316 F.3d 702, 713 (2003). Public indecency ordinances are evaluated under the four-part *O'Brien* test, while adult entertainment zoning ordinances are evaluated as time, place, and manner restrictions. *Id.* The Supreme Court has yet to address the constitutionality of ordinances that directly target nude dancing, like the Harrison ordinance, but are not across-the-board bans on public nudity. In any event, it appears that the Court would treat an adult entertainment regulation as content-neutral and subject it to intermediate scrutiny, whether analyzed under the *O'Brien* test or as a time, place, and manner restriction, so long as the focus of the regulation is to combat the negative secondary effects associated with such establishments.[2] *See City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 448 (2002) (plurality) ("A zoning restriction that is designed to decrease secondary effects and not speech should be subject to intermediate rather than strict scrutiny."); *Pap's A.M.*, 529 U.S. at 310 ("Erie's stated interest in combating the secondary effects associated with nude dancing establishments is an interest unrelated to the suppression of expression.").

In *Ben's Bar*, the Seventh Circuit surveyed the fractured landscape of constitutional standards that apply to adult entertainment regulations. In *Ben's Bar*, the court upheld an ordinance that prohibited the sale or consumption of alcohol on the premises of adult entertainment establishments.

_____

[2] Such negative secondary effects, as recognized by the Court are: preventing crime, maintaining property values, and maintaining the quality of a city's neighborhoods. *See, e.g., City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 434 (2002) (plurality); *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47 (1986).

9

*Id.* at 722-28. After reviewing possible standards set out by the Supreme Court, the Seventh Circuit essentially combined the two tests to determine whether the Somerset ordinance was constitutional. *Id.* at 722. Thus, an ordinance that restricts the combination of alcohol and nude dancing[3] is constitutional if (1) the state is regulating pursuant to a legitimate governmental power, (2) the regulation does not completely prohibit adult entertainment, (3) the regulation is aimed not at the suppression of expression, but rather at combating the negative secondary effects caused by adult entertainment establishments, and (4) the regulation is designed to serve a substantial government interest, narrowly tailored, and reasonable avenues of communication remain available. *Ben's Bar*, 316 F.3d at 722.

## B. The Overbreadth Challenge

The plaintiff brings a facial challenge to the constitutionality of the ordinance, contending that the ordinance prohibits the plaintiff's freedom of expression, i.e., the plaintiff's freedom to present non-obscene nude dancing. In doing so, the plaintiff argues that the ordinance is "overbroad because it sweeps within its ambit constitutionally protected conduct which the government is not permitted to regulate." (Pl.'s Br. at 6.)

---

[3] The Harrison ordinance is slightly different than the ordinance in Ben's Bar – it regulates the scope of adult entertainment that may be provided in licensed establishments instead of prohibiting alcohol on the premises of adult establishments. However, the aim of both ordinances is the same – to combat the negative secondary effects associated with the combination of alcohol and nude dancing. *See id.* at 723-24 ("[T]he Village concluded that 'the consumption of alcoholic beverages on the premises of a Sexually Oriented Business exacerbates the deleterious secondary effects of such businesses on the community.'"); Harrison, Wis. Ordinance No. 95, § 1.19(a)(4) (reproduced in Pl.'s Br. App. A-3) ("Bars and taverns featuring live totally nude, non-obscene, erotic dancing have in other communities tended to further the increase of [negative secondary effects]."). Therefore, it is my conclusion that the Harrison ordinance should be examined under the *Ben's Bar* standard of review.

10

A plaintiff challenging the constitutionality of an ordinance may do so in two different ways: a plaintiff may challenge the ordinance on its face or may challenge the ordinance as it is applied to the plaintiff. An "as applied" challenge requires the plaintiff to show that the ordinance was applied to the plaintiff in an unconstitutional manner. *Kraimer v. City of Schofield*, 342 F. Supp. 2d 807, 815-16 (W.D. Wis. 2004) (citing Black's Law Dictionary 233 (7th ed. 1999)). There are two different ways a plaintiff may attack an ordinance on its face. An ordinance can be facially invalid because it is unconstitutional "in every conceivable application" or because it is unconstitutionally overbroad. *Members of the City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 797 (1984); *see also MDK, Inc. v. Village of Grafton*, 345 F. Supp. 2d 952, 960 (E.D. Wis. 2004).

In this suit, the plaintiff challenges the Harrison ordinance on the basis that it is unconstitutionally overbroad. A statute is unconstitutionally overbroad if it "restrict[s] constitutionally protected expression as well as expression that is unprotected." *Kraimer*, 342 F. Supp. 2d at 814. Overbreadth challenges are permitted for fear that a statute that is written too broadly may inhibit the constitutionally protected speech of third parties. *Taxpayers for Vincent*, 466 U.S. at 798; *see also Schultz*, 228 F.3d at 848 (stating that the overbreadth doctrine allows such challenges "to avoid chilling the speech of third parties who may be unwilling or unlikely to raise a challenge in their own stead").

In general, "a litigant only has standing to vindicate his own constitutional rights." *Taxpayers for Vincent*, 466 U.S. at 797. However, an overbreadth challenge allows litigants to challenge an overly broad statute on behalf of third parties that are not before the court based on "a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick v. Oklahoma*, 413 U.S. 601,

11

612 (1973); *see also Taxpayers for Vincent*, 466 U.S. at 798 (explaining that the Supreme Court recognized an exception to the standing requirement for laws that are written so broadly as to inhibit speech of third parties); *MDK*, 345 F. Supp. 2d at 952 ("Such challenges are permitted because the threat of enforcement of an overbroad law may "chill" protected speech.") (citing *Virginia v. Hicks*, 539 U.S. 113, 119 (2003)). In this respect, the overbreadth doctrine may be seen as "an exception to the prudential standing requirement that a litigant may assert only his or her own rights in federal court." *MDK*, 345 F. Supp. 2d at 959.

The overbreadth doctrine, however, is not without limits. In *Broadrick*, the Supreme Court cautioned that because the overbreadth doctrine is "strong medicine" it has been used by the Court "sparingly and only as a last resort." *Broadrick*, 413 U.S. at 613. In *Broadrick*, the Court also held that statute must be "substantially" overbroad to warrant invalidation on facial overbreadth grounds. *Id.* at 615. The Court reasoned that "there comes a point where that effect – at best a prediction – cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe. *Broadrick*, 413 at 615. In *Taxpayers for Vincent*, the Court elaborated on the substantial overbreadth requirement by adding that there must be a "realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged." *Taxpayers for Vincent*, 466 U.S. at 801 (citing *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216 (1975)). Thus, for a statute to be invalidated on overbreadth grounds, it must be substantially overbroad *and* pose a realistic danger that recognized First Amendment rights of others will be compromised. Lastly, the overbreadth doctrine should only be used when a limiting

12

construction cannot be used to narrow the challenged statute and "remove the seeming threat or deterrence to constitutionally protected speech." *Broadrick*, 413 U.S. at 613.

"When the government restricts speech not associated with harmful secondary effects, then the government cannot be fairly said to be regulating with those secondary effects in mind and the regulation extends beyond its legitimate reach." *Schultz*, 228 F.3d at 849. Therefore, if the Harrison ordinance covers a substantial amount of expressive activity that cannot be believed to cause negative secondary effects it will be invalidated as overbroad. *See id.*

The plaintiff argues that seven instances of constitutionally protected conduct are swept within the ordinances' control, making it substantially overbroad: (1) the prohibitions are not limited to live performances, (2) the prohibitions are not limited to nude, erotic dancing, (3) the prohibitions on simulated sexual activity and simulated nudity are overbroad, (4) the prohibitions cover too many places, (5) the ordinance prohibits isolated instances of nudity which cannot be believed to cause negative secondary effects, (6) the exemptions which purport to protect expressive activity that has no negative secondary effects are drawn too narrowly, and (7) the ordinance requires more clothing to be worn than the Supreme Court has authorized. Lastly, the plaintiff argues that the ordinance cannot be saved by a limiting construction. (Pl.'s Br. at 30-28.)

In general, the plaintiff's challenge is based on the premise that the ordinance is drafted so broadly that it prohibits expressive conduct that cannot be believed to cause negative secondary effects. I will address each challenge in turn.

## 1. Performances Covered by the Ordinance

The plaintiff first argues that the ordinance is not limited to live, nude dancing, and is so broad as to include "an art exhibition of paintings, a ballet performance, a television program, a

13

sculpture, video games, and a serious drama, where such depictions show any of the prohibited activities or portions of the anatomy."  (Pl.'s Br. at 9-10.)

Although Section 1.19(b) is titled "Nude Dancing in Licensed Establishments Prohibited," Section 1.19(b), and the related Section 1.14(k), do not appear to be limited to live, nude, erotic dancing.  Both sections prohibit "any person to perform, or for any licensee or manager or agent of the licensee to permit any employee, entertainer or patron to engage in any *live act, demonstration, dance or exhibition* on the licensed premises . . ."  Thereafter, both sections of the ordinance go on to describe the prohibited nudity and/or simulated sexual activity.

When interpreting a statute, the place to begin is with the language of statute itself to determine if the meaning of the words' use is clear.  *Firstar Bank, N.A., v. Faul*, 253 F.3d 982, 987 (7th Cir. 2001); *see United States v. Turchen*, 187 F.3d 735, 739 (7th Cir. 2001) ("When interpreting a provision of the sentencing guidelines, a court must begin with the text of the provision and the plain meaning of the words in the text.").  The conduct that the ordinance prohibits is any "live act, demonstration, dance or exhibition."  Construing this phrase with common English usage, it is clear that the word "live" modifies "act," but it is unclear whether it modifies "demonstration," "dance," or "exhibition."  The Chicago Manual of Style dictates that "[a]n adjective that modifies a noun or noun phrase usually precedes it."  Chicago Manual of Style 168 (15th ed. 2003). Thus, it would appear that the word "live" only modifies "act," otherwise it would have been repeated before "demonstration," before "dance," and before "exhibition."  Therefore, both sections of the ordinance would appear to prohibit non-live demonstrations, exhibitions, and dances that involve partial nudity and/or simulated sexual activity.

14

The Town argues that there is no ambiguity in the ordinance and that it only applies to live performances. (Def.'s Br. at 3.) The Town contends that the main parts of both Section 1.14(k) and Section 1.19(b) describe live persons. Section 1.19(b) states that "[i]t shall be unlawful for *any person* to perform, or for any licensee or manager or agent . . . to permit *any employee, entertainer or patron* to engage in any live act, demonstration, dance or exhibition . . . which: (1) [s]hows *his/her* genitals . . ." The wording of Section 1.14(k) is similar, with a slight variation in the subsection: it states that "[i]t shall be unlawful for *any person* to perform, or for any licensee or manager or agent . . . to permit *any employee, entertainer or patron* to engage in any live act, demonstration, dance or exhibition . . . which: (1) "[e]xposes *his or her* genitals . . ." The Town argues that "[i]t is beyond a strained reading of these sections to suggest that the person/licensee/manager/agent/entertainer/ patron referred to in the main part is not the same "his or her" and "his/her" referred to in the subparts." (Def.'s Br. at 4.)

Even if "his or her" in the cited subsections refers to the same "person"as referred to in the main parts of the sections, that still does not clear up the ordinance's problematic reach to non-live conduct. The other three subsections of Section 1.14(k) and the other two subsections of Section 1.19(b) do not use the "his or her" language that the first subsections use. For example, Section 1.14(k)(3) prohibits the exposure of "any portion of the female breast at or below the areola thereof." Similarly, Section 1.19(b)(3) prohibits the showing of "any portion of the female breast below a point immediately above the top of the areola." Neither section makes reference to "her" breast; therefore, the breast could be that of a person on television or even an inanimate object, such a sculpture.

My reading of the Harrison ordinance is consistent with the reading of a similar ordinance in *Clarkson v. Town of Florence*, 198 F. Supp. 2d 997, 1012 (E.D. Wis. 2002). The ordinance at

15

issue in *Clarkson* was almost identical to the Harrison ordinance: it too banned nudity in "any live act, demonstration, dance or exhibition." *Id.* In *Clarkson*, United States District Judge Lynn Adelman construed the word "live" to modify "act," but not the rest of the nouns in the series; therefore, the ordinance prohibited non-live demonstrations and exhibitions involving nudity. *Id.* The *Clarkson* court reasoned that in common English usage, "'single word adjectives . . . usually appear immediately before the word they modify.'" *Id.* (quoting Porter G. Perrin & George H. Smith, Handbook of Current English § 25.2 (1955)). The court further stated that it has found "no text suggesting that it is common to use a single word adjective to modify separate nouns occurring in a series." *Id.*

Similarly, the plaintiff also argues that the ordinance is not limited to nude dancing demonstrations and exhibitions. Because "exhibition" and "demonstration" are not defined by the ordinance, I begin with the assumption that the drafters intended these words to have their ordinary meanings. *See Firstar Bank*, 253 F.3d at 987 (using the ordinary dictionary meaning of the word "located" because it was not defined in the statute); *Turchen*, 187 F.3d at 739 ("When interpreting a provision of the sentencing guidelines, a court must begin with the text of the provision and the plain meaning of the words in the text.").

"Exhibition" is defined as (1) "[a]n act of exhibiting," (2) "[s]ome thing exhibited," (3) "[a] public display, as of art objects or agricultural products," and (4) "[a] grant awarded by a school or university to scholars." Webster's II New Riverside University Dictionary 452 (1994). "Demonstration" is defined as (1) "[t]he act of making or proving," (2) "[c]onclusive evidence: proof," (3) "[a]n illustration or explanation, as of a theory or product, by exemplification or practical application," (4) "[a] manifestation, as of one's feelings," (5) "[a] public display of group opinion,"

16

and (6) "[a] show of military strength." *Id.* at 361. The most appropriate definition of both "exhibition" and "demonstration" would seem to be "a public display." When so read, the ordinance prohibits non-live public displays of partial nudity and/or simulated sexual activity.

So construed, both sections of the Harrison ordinance prohibit conduct that is far more benign than nude dancing – conduct that does not have the negative secondary effects that are associated with nude dancing. Indeed, as the plaintiff points out, because the ordinance is not limited to live conduct, certain television programs and photographs may even run afoul of the ordinance. (*See* Pl.'s Br. at 11.) Moreover, certain all-female educational demonstrations for all-female audiences would be prohibited on licensed premises. The ordinance would prohibit a demonstration of how to conduct a breast self examination. (*See* Pl.'s Br. at 13.) The ordinance would also prohibit a demonstration by La Leche League of how to breast feed correctly. (*See* Pl.'s Br. at 13.) Lastly, the ordinance would also prohibit exhibitions of works of art depicting nudity on licensed premises, such as Michelangelo's David. *See Clarkson*, 198 F. Supp. 2d at 1012. And, it certainly could not be argued that the above-described conduct is associated with negative secondary effects, such as increased criminal activity and depreciation of the value of real property. *See* Harrison, Wis. Ordinance No. 95, § 1.19(a)(4) (reproduced in Pl.'s Br. App. A-3).

### 2. Places Covered by the Ordinance

Next, Eggert argues that the ordinance is overbroad because the prohibited conduct is not only prohibited in bars and taverns. (Pl.'s Br. at 16-18.) Both sections of the ordinance prohibit nudity and simulated sexual activity "on the licensed premises." Therefore, the ordinance extends to any place that holds a liquor license, which would include restaurants and hotels. Furthermore, because the ordinance prohibits nudity and simulated sexual activity anywhere on the licensed premises, the

17

ordinance would extend to a hotel's lobby, individual guest rooms, conference rooms, and bathrooms.  (Pl.'s Br. at 17.)

The Town argues that there is no real and substantial risk that the ordinance will compromise the First Amendment rights of parties that are not before the court; therefore the plaintiff's overbreadth challenge should fail.  (Def.'s Br. at 5-6.)  The Town claims that the Harrison ordinance "is meant to apply to bars, and has never been applied in any other way."  (Def.'s Br. at 5.)  The Town admits that because the ordinance applies to acts that take place "on the licenses premises" and "on the premises of a licensed establishment," it would include restrooms.  (Def.'s Br. at 6.)  Despite the ordinance's inclusion of restrooms, the Town argues that "there is not a realistic danger that the Ordinance will compromise the rights of a patron exposing his or her buttocks or genitals in the bathroom while in the process of using the urinal or toilet."  (Def.'s Br. at 6.)

However, I am not persuaded by the Town's argument.  To begin, in order to construe the meaning of the term "licensed establishment," I will start with the language of the ordinance.  *See Firstar Bank*, 253 F.3d at 987.   Section 1.19(d) defines "licensed establishment" as "any establishment licensed by the Town Board of the Town of Harrison to sell alcohol beverages pursuant to Ch. 125, Wis. Stats."  This definition is quite clear; it does not, as the Town suggests, encompass only bars.  Indeed, if the drafters of the ordinance intended to have the ordinance apply only to bars, then the drafters would have expressed that intent in the language of the statute.  For example, instead of using the term "licensed establishment," the drafters instead could have used the terms "bar, barroom, tavern, taproom, night club," and other synonyms for "an establishment . . . having" . . . "a counter at which drinks, esp[ecially] alcoholic drinks, and occas[sionally] food are

18

served."  *See* Webster's II New Riverside University Dictionary 152 (1994) (defining the word "bar").

Second, the Town's example does not fully illustrate the problematic nature of the ordinance. It certainly does not seem to be a realistic threat that one might be prosecuted under the ordinance for using a public restroom for its intended purpose.  However, the Town's example does not account for the other "licensed establishments" that fall under the ordinance's control.  As the plaintiff has pointed out, hotels and restaurants are also licensed establishments.  And, one cannot imagine that a hotel exhibition of works of art depicting nudity would be associated with the negative secondary effects the ordinance seeks to combat.  Furthermore, the prohibited acts are not confined to sexually oriented businesses, which might alleviate the problematic nature of the range of establishments covered by the ordinance.  *See Kraimer*, 342 F. Supp. 2d at 821 (noting that a similar ordinance was not confined to sexually oriented business, but rather applied to "establishments dealing in alcoholic beverages").

Lastly, my reading that the ordinance covers too many places is in line with the reading of the ordinance at issue in *Clarkson*.  The ordinance at issue in *Clarkson* was similar to the Harrison ordinance – it prohibited nudity in "'any establishment licensed by the Town of Florence to sell alcohol beverages.'"  *Clarkson*, 198 F. Supp. 2d at 1013; *see also Kraimer*, 342 F. Supp. 2d at 821 (holding that a similar ordinance, which regulated "establishments dealing in alcoholic beverages" applied to too broad a range of establishments, was not confined to "sexually oriented businesses," and therefore was overbroad").  The *Clarkson* court found that the ordinance was overbroad because it too covered "not only bars and taverns but also hotels and restaurants."  *Id.*  The court then went on to describe the problematic nature of prohibiting such conduct in hotels:

19

Further, with respect to hotels, the ban on expressive nudity covered not only the room where the liquor was served but any room "on the premises." Thus, the ordinance prohibited expressive nudity occurring in a hotel conference and meeting rooms and also in individual guest rooms. It banned the showing of a movie or television program in a hotel room if the movie or program included nudity. The ordinance also prohibited private acts of expressive nudity conducted in a hotel room, including a striptease by one spouse to another. Once again, expressive nudity of this type is not associated with secondary effects.

*Id.*; *see also Kraimer*, 342 F. Supp. 2d at 821-22 (finding that a similar ordinance would "apply to a meeting of pediatricians at a conference room at a local motel, attending a presentation on recognizing the signs of sexual abuse and physical abuse of young children, so long as alcoholic beverages were being served in the motel's bar"). Because the Harrison ordinance is quite similar to the ordinance at issue in *Clarkson*, the same scenarios described above would also be prohibited by the Harrison ordinance. Because the Town has made no showing that the above-described scenarios are associated with negative secondary effects, the ordinance applies to too broad a range of establishments, making it unconstitutionally overbroad.

### 3. Isolated Incidents of Nudity

Next, Eggert argues that the ordinance prohibits isolated incidents of nudity that do not occur frequently enough to cause the negative secondary effects that are targeted by the ordinance. Eggert argues that the following scenarios would be banned by the ordinance:

For example, it is not uncommon for a tavern in Wisconsin to try to present some special entertainment for its female patrons during deer-hunting season, when many wives find themselves to be temporary "deer-hunting widows." If a tavern or hotel were to bring in the Chippendales, a male strip tease ensemble, once a year for such an occasion, it is unlikely in the extreme that there would be an outbreak of prostitution or a plunge in neighboring property values as a result. Another scenario which is not uncommon in Wisconsin is the renting on [sic] a private party room at a hotel or restaurant for a bachelor or bachelorette party, complete with a stripper. In some venues this might occur quite rarely, say, once or twice a year. Certainly, no

20

studies support the idea that occasional or isolated performances, even of an unapologetically erotic nature, could have such secondary effects.

(Pl.'s Br. at 23-24.)

Once again, I find *Clarkson* instructive on this issue. The ordinance at issue in *Clarkson* also prohibited infrequent nude dancing, such as that which might occur at a private bachelor or bachelorette party. *Id.* at 1013. The court in *Clarkson* concluded that "nude dancing occurring so infrequently could not plausibly be believed to cause secondary effects such as crime and declining property value." *Id.* Indeed, in *Schultz*, 228 F.3d at 850, the Seventh Circuit found it significant that a prohibition on nude dancing only covered establishments that "regularly feature" nude dancing, which was construed to mean "as the permanent focus of its business and gives special prominence to such content on a regular basis." *Id.*; *see Clarkson*, 198 F. Supp. 2d at 1013 (citing *Schultz*, 228 F.3d at 850). Given the foregoing, it is my opinion that the Town has failed to show how infrequent nude dancing, of the nature described above, is associated with the negative secondary effects targeted by the Harrison ordinance.

**4. The Exemptions**

Section 1.19(c) does provide an exemption for expressive nudity that is prohibited by subsection (b), but is not associated with the negative secondary effects targeted by the ordinance. The exemption is as follows:

> (c)    Exemptions. The provisions of this Section does [sic] not apply to the following licensed establishments; theaters, performing arts centers, civic centers, and dinner theater where live dance, ballet, music and dramatic performances of serious artistic merit are offered on a regular basis and in which the predominant business or attraction is not the offering to customers of entertainment which is intended to provide sexual stimulation or sexual gratification to such customers and where the establishment is not distinguished by an emphasis on, or the advertising or promotion of, employees engaging in nude erotic dancing.

21

Eggert argues that the exemptions in Section 1.19(c) are so narrowly drawn that they leave "benign expressive activity" unprotected. (Pl.'s Br. at 25-29.) Eggert points to three problematic areas of the exemption. First, the exemption only relieves performances that take place at theaters, performing arts centers, civic center, and dinner theaters. And, performances with artistic merit should be exempted regardless of the setting where they occur, because they are not associated with negative secondary effects. (Pl.'s Br. at 26.) Second, even if expressive activity "navigates the first hurdle" of taking place in a theater, performing arts center, civic center, or dinner theater, which offers live dance, ballet, music, and dramatic performances of serious artistic merit, there is yet another "hurdle." (Pl.'s Br. at 27.) The live dance, ballet, music, and dramatic performances of serious artistic merit must occur on a regular basis, not occasionally. (Pl.'s Br. at 27.) The plaintiff argues that there is "no rational basis for a belief that a performance of a ballet featuring partial nudity will be immune from secondary effects only if presented in a place that offers such events on a regular basis, but will cause secondary effects if presented in a place that can only offer such works rarely." (Pl.'s Br. at 28.) Third, the plaintiff contends that "[e]ven if an exemption for expressive nudity could be limited to venues that present serious artistic performances on a "regular basis," without a definition of "regular basis," such exemption is useless in curing overbreadth problems." (Pl.'s Br. at 29.) I will look at each problem that the plaintiff points out in turn.

To begin, I agree with the plaintiff that performances with artistic merit should be exempted regardless of the setting where they occur, because they are not associated with negative secondary effects. In order to overcome an overbreadth challenge, an ordinance such as Harrison's must contain an exception for serious artistic, social, and political expression that contains nudity or sexual content. *See Schultz*, 228 F.3d. at 849-850 ("Unlike statutes upheld against overbreadth challenges

22

in other cases, the Ordinance contains no explicit exception for expression that contains nudity or sexual depiction but also possesses serious artistic, social or political value."); *Kraimer*, 342 F. Supp. 2d at 821 (holding that ordinance is overbroad because it makes no exception for live performances with serious artistic, social, and political value or for exhibitions of film or art works).

The Harrison ordinance attempts to create an exception for serious artistic, social, and political expression, but it falls short. As an example, the plaintiff suggests that the play *Hair*, which features nudity, should be protected regardless of where it is performed because it is a performance which has serious artistic merit. Indeed, few could argue that *Hair* does not have serious artistic merit, and few could argue that *Hair* is associated with negative secondary effects.[4] Moreover, the Town has not shown that serious artistic performances that contain nudity (such as *Hair*), are associated with negative secondary effects in some licensed establishments, but not others.[5]

I also agree with the plaintiff that the exemption fails to narrow the scope of the ordinance because it only exempts venues that perform live dance, ballet, music, and dramatic performances of serious artistic merit on a regular basis. The Town has not provided any evidence that negative secondary effects are associated with venues offering serious artistic performances but only on an infrequent basis. The problem is only exacerbated by the fact that "regular basis" is not defined –

---

[4] The play *Hair* (along with the play *Equus*) has often been used by courts as an example of a performance with serious artistic merit that also contains nudity, and therefore cannot be associated with the negative secondary effects targeted by nude dancing and other adult entertainment ordinances. *See, e.g., Barnes*, 501 U.S. at 585 n.2; *Schultz*, 228 F.3d at 849.

[5] In addition, the exception does not protect the many examples of prohibited expression that are not associated with negative secondary effects that I previously described in this decision. The exemption would not protect an exhibit of works of art depicting nudity, meetings which instruct women on how to conduct a breast self-exam or how to breast feed correctly, or television performances that are covered by the ordinance.

a venue would not know how many performances it takes to qualify for the exemption.[6]  Under the language of the exemption, a dinner theater that only showed a few performances a year at irregular intervals would not be entitled to the exemption because it is not a "theater where live dance, ballet, must and dramatic performances of serious artistic merit are offered on a regular basis."

Lastly, as the plaintiff points out, even if the exemption in Section 1.19(c) was sufficient to limit Section 1.19(b) to only those acts associated with negative secondary effects, it would not limit the scope of prohibited acts in Section 1.14(k).  Section 1.14(k) is almost identical to Section 1.19(b); the only major difference between the two sections is prohibition of simulated sexual activity in Section 1.14(k).  Because Section 1.14(k) does not have any exemptions, certain expressive nudity that is exempt under Section 1.19(b) is prohibited by Section 1.14(k).  In sum, for all of the reasons stated above, I find that the ordinance's exemption in Section 1.19(c) does not serve to properly narrow the overbreadth of Section 1.19(b) and Section 1.14(k).

## 5.  The Clothing Requirement

Eggert contends that the ordinance's clothing requirement "goes substantially beyond that which was authorized by the Supreme Court in *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560 (1991), and in *City of Erie v. Pap's A.M.*, 529 U.S. 277 (2000)."  (Pl.'s Br. at 19.)  The "clothing requirement" of the ordinance is essentially that part of the ordinance that dictates the minimum amount of clothing one would have to wear to comply with the ordinance.  Eggert argues that an ordinance can require one to wear pasties and a g-string, but no more:

---

[6] Indeed, regular is defined as "[h]appening at fixed intervals: periodic."  Webster's II New Riverside University Dictionary 990 (1994).  This implies that  a venue must show performances at periodically fixed intervals to qualify.

24

The pasties and g-strings approved in *Barnes* and [*Pap's A.M.*] concededly cover the genitals, pubic hair, perineum, vulva, anus, and areola, but a dancer wearing only pasties and a g-string would run afoul of the prohibitions in § 1.14(k)(3) and § 1.19(b)(2) on exposing parts of the breast below the top of the areola. She would also be violating the prohibition in § 1.14(k)(1) on exposure of the buttocks, and the prohibition in § 1.19(b)(1) on exposure of the anal cleft or cleavage."

(Pl.'s Br. at 19.)

Eggert's assertion that a dancer wearing only pasties and a G-string would violate the ordinance is factually correct. Pasties would not cover all of the breast below the areola, and a g-string would not cover all of the buttocks. *See MDK*, 345 F. Supp. 2d at 958. Eggert is also correct in asserting that the Supreme Court has held that requiring dancers to wear pasties and G-strings is constitutional. *See Ben's Bar*, 316 F.3d at 708 n.11 (citing *Pap's A.M.*, 529 U.S. at 301; *Barnes*, 501 U.S. at 571-72) ("The Supreme Court has, on two separate occasions, held that requiring nude dancers to wear pasties and G-strings does not violate the First Amendment.").

However, Eggert's assertion that an ordinance can at most require a dancer to wear pasties and a G-string is misplaced, as is Eggert's reliance on *Barnes* and *Pap's A.M.* The ordinances at issue in *Barnes* and *Pap's A.M.* are easily distinguishable from the Harrison ordinance. *See Pap's A.M.*, 529 U.S. at 283-84; *Barnes*, 501 U.S. at 568-69; *Ben's Bar*, 316 F.3d at 713. The ordinances in *Barnes* and *Pap's A.M.* were both public indecency ordinances. *See Pap's A.M.*, 529 U.S. at 283-84; *Barnes*, 501 U.S. at 568-69; *Ben's Bar*, 316 F.3d at 713. Although they greatly affect nude dancing establishments, public indecency ordinances ban all public nudity. *See Pap's A.M.*, 529 U.S. at 283 (ordinance bans one from "knowingly or intentionally appear[ing] in public in a 'state of nudity'"); *Barnes*, 501 U.S. at 568 (stating the ordinance was a "general prohibition").

Case 1:04-cv-00759-WEC   Filed 06/08/05   Page 25 of 30   Document 26

The Harrison ordinance is not a public indecency ordinance. Rather, it restricts nudity and simulated sexual activity in licensed establishments. In addition, the Seventh Circuit upheld the clothing requirement in *Ben's Bar*. The *Ben's Bar* requirement was similar to the Harrison ordinance's requirement – it too would have been violated by wearing only pasties and a G-string.[7] *See Ben's Bar*, 316 F.3d at 708, 722-28. Therefore, it would be appropriate to evaluate the clothing requirement under the test enunciated in *Ben's Bar*, rather than under the standard suggested by the plaintiff. Indeed, the Town argues that the ordinance's clothing requirement should be upheld pursuant the decision in *Ben's Bar*. (*See* Def.'s Br. at 6-8.)

However, my analysis will not proceed to evaluating the ordinance's clothing requirement under the standard articulated in *Ben's Bar* because the plaintiff has brought a facial overbreadth challenge to the ordinance. The plaintiff in *Ben's Bar* did not bring a facial overbreadth challenge to the ordinance, and therefore overbreadth analysis was not necessary and was not contemplated by the *Ben's Bar* court. The United States District Court for the Western District of Wisconsin addressed a similar issue in *Kraimer*:

> Defendants argue that an overbreadth analysis is out of place in evaluating [the ordinance] . . . The only appropriate analysis, they contend, is the four-part test set out first in *United States v. O'Brien* [] and adopted by the Court of Appeals for the Seventh Circuit in *Ben's Bar*[]. Defendant misses the point. Its ordinance is not limited to sexually oriented businesses as was the Somerset ordinance at issue in *Ben's Bar*, but extended to a much larger group of businesses and facilities that may incidentally feature activity or images that come within the broad language of [the ordinance]. In this case, therefore, the initial analysis must be one of overbreadth. No such analysis was necessary in Ben's Bar because the plaintiffs never contended that the ordinance was overbroad. As a result, the court of appeals addressed only the

---

[7] The ordinance in *Ben's Bar* banned the sale or consumption of alcohol on the premises of businesses that featured "seminudity," which was defined as "'the exposure of a bare male or female buttocks or the female breast below a horizontal line across the top of the areola at its highest point with less than a complete and opaque covering.'" *Id.* at 708.

26

constitutionality of a ban on the sale of all alcoholic beverages in sexually oriented businesses that the village had enacted "to promote the health, safety, and general welfare of the citizens of the Village." *Id.* at 705.

*Kraimer*, 342 F. Supp. 2d at 822.

Indeed, the clothing requirement might withstand constitutional scrutiny if it were limited to sexually oriented businesses, *see id.* at 722-28 (upholding an ordinance that prohibited the sale or consumption of alcohol on the premises of adult entertainment establishments), but, as explained above, the coverage of the Harrison ordinance sweeps far more broadly than covering just sexually oriented businesses. Consequently, the ordinance's clothing requirement is also overbroad.

**6. Prohibition on Simulated Sexual Activity**

In addition to prohibiting nudity on licensed establishments, Section 1.14(k), at subsection (4), also prohibits conduct in which a person "[e]ngages in or simulates sexual intercourse and/or any sexual contact, including the touching of any portion of the female breast or the male and/or female genitals." The plaintiff argues that this prohibition on simulated sexual conduct is unconstitutional, citing *Schultz* in support of its argument. (Pl.'s Br. at 14-15.)

In *Schultz*, the Seventh Circuit held that an ordinance with similar prohibitions on simulated sexual activity was unconstitutional because it was not necessary to serve the municipality's significant interest in "arresting secondary effects." *Schultz,* 228 F.3d at 848. The ordinance banned "the performance of a strikingly wide array of sexually explicit dance movements, or what the Ordinance misdenominates as 'specified sexual activities,' including 'the fondling or erotic touching of human genitals, pubic region, buttocks, anus, or female breasts." *Id.* at 847. The court reasoned that

27

> [u]nlike a simple prohibition on full nudity, [the ordinance] does much more than inhibit "that portion of the expression that occurs when the last stitch is dropped." *Erie*, 120 S.Ct. at 1393. [The ordinance] constrains the precise movements that the dancer can express while performing. The dancer may use non-sexually explicit elements and semi-nudity to convey a certain degree of sensuality, but putting taste aside, more explicit and erotic content is commonly available on primetime television without being fairly regarded as adult entertainment. . . .
>
> None of the Supreme Court's precedent permits a government regulation expressly directed at adult entertainment and imposing such a restriction on non-obscene adult entertainment.

*Id.*

Given this precedent, the limitations in Section 1.14(k)(4) cannot stand. Neither the Supreme Court, nor the Seventh Circuit, has held that negative secondary effects relied on by the Town support both a prohibition on nudity and simulated sexual movements. Nor has the Town provided any evidence showing that simulated sexual movements are associated with negative secondary effects above and beyond those that are articulated in the ordinance.

## C. Application of a Limiting Construction

Lastly, a facial overbreadth challenge will not invalidate an ordinance when a limiting construction is readily available that would make it constitutional. *Schultz*, 228 F.3d at 848, 850. In *Schultz*, the court limited the construction of an ordinance that applied to businesses that "regularly featured" sexually oriented business. *Id.* at 850. The court construed the word "regularly" to mean "always," thereby limiting the application of the ordinance to businesses that feature "nudity, semi-nudity or specified sexual content as the permanent focus of its business and gives special prominence to such content on a permanent basis." *Id.*

The Harrison ordinance is not susceptible to such a narrowing construction. As explained above, the ordinance prohibits a substantial amount of nudity and/or simulated sexual activity that

28

is not associated with negative secondary effects: it sweeps in all licensed establishments, including hotels and restaurants; it covers non-live expressive nudity, such as art exhibitions; it covers activity such as breast self-exam demonstrations and breast feeding demonstrations; and, it applies to infrequent nude dancing, such as that which occurs at a bachelor or bachelorette party. In addition, the ordinance's exemption does not mend its infirmities. The exemption only applies to theaters, performing arts centers, civic centers, and dinner theater where live dance, ballet, music and dramatic performances of serious artistic merit are offered on a regular basis. Harrison, Wis. Ordinance No. 95, § 1.19(c). Given the broad scope of the ordinance's application, limiting the ordinance would require a complete reworking, a task that is better left to the Town Board of Harrison. *See Kraimer*, 342 F. Supp. 2d at 823.

## IV. CONCLUSION AND ORDER

For the above-stated reasons, it is my conclusion that Ordinance No. 95, at Sections 1.14(k) and 1.19(b) is unconstitutionally overbroad. Consequently, the plaintiff's motion for summary judgement will be granted.

**NOW THEREFORE IT IS ORDERED** that the plaintiff's motion for summary judgment be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that the Town of Harrison be and hereby is enjoined from enforcing Ordinance No. 95, Sections 1.19 and 1.14;

**IT IS FURTHER ORDERED** that a status conference be conducted on Thursday, June 30, 2005, at 9:30 a.m. in Room 253 of the U.S. Courthouse, 517 E. Wisconsin Avenue, Milwaukee, WI 53202, for the purpose of discussing with the parties the further pretrial processing of this case.

**SO ORDERED** this  8th  day of June 2005, at Milwaukee, Wisconsin.


s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge